## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LARIAN WALLIS,**<br>  **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-536**<br>        **c/w 13-2538** |
| **HORNBECK OFFSHORE**<br>**OPERATORS, et al.,**<br>  **Defendants** | **SECTION "E"** |

*Applies to:  12-536*

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, Larian Wallis ("Wallis"), brought a maritime personal injury claim against his employer, Royal Eagle Services, LLC ("Royal Eagle"), vessel owner, Hornbeck Offshore Trinidad and Tobago, L.L.C., and vessel operator, Hornbeck Offshore Operators, L.L.C. (collectively "Hornbeck"). Plaintiff's claims are brought pursuant to the Jones Act, 46 U.S.C. § 30104, and general maritime law for unseaworthiness and negligence.

This matter was tried before the Court, sitting without a jury, over four days.[1] The Court heard testimony from Patrick Riggins, Steven Johnson, Kim Riggins, Larian Wallis, Henry Daigle, Thomas Meunier, Dr. Randy Rice, Mark Percle, Edward Geoffrey Webster, Todd Gentile, Tron Grogan, Grady Grey, Eronne Martin, Robert O'Neal Smith, Christopher Osborne, George Andrade, Carla Seyler, Captain Richard Frenzel, Dr. Mariusz Ziejewski, Kenneth Boudreaux, and Dr. Gordon Nutik and admitted into

---

[1] R. Doc. 170, 171, 172, and 173 (minute entries for proceedings held on September 8, 9, 10, and 15 of 2014, respectively).

evidence the depositions of Dr. John Heller and Captain Joe Deremer.[2] Having considered the testimony and evidence at trial, the arguments of counsel, and the applicable law, the Court now issues the following Findings of Fact and Conclusions of Law in accordance with Federal Rule of Civil Procedure 52(a). To the extent any findings of fact may be construed as conclusions of law, the Court adopts them as such.

**FINDINGS OF FACT**

In May of 2009, Plaintiff Larian Wallis began working for Royal Eagle Services, LLC as an offshore rigger. Royal Eagle is a Louisiana-based LLC supplying riggers to companies operating offshore supply vessels in the Gulf of Mexico. The riggers are assigned as members of the crew and are responsible for loading and unloading cargo. Wallis worked with Royal Eagle through August of 2010, when he was laid off because of the moratorium imposed on drilling following the BP oil spill. After having no luck finding another job as a rigger, Wallis went home to Georgia and worked in the manufacturing industry. During this time, Wallis was a member of a gym and became an avid weight lifter. In late summer of 2011, Pat Riggins, the Operations Manager at Royal Eagle, called Wallis in Georgia and offered to rehire him as a rigger. Wallis took the position, and Royal Eagle flew him back to Louisiana.

The first assignment Wallis had upon returning to Royal Eagle was as a member of the crew of the HOS CORNERSTONE, an offshore supply vessel owned by Hornbeck Offshore Trinidad and Tobago, L.L.C. and operated by Hornbeck Offshore Operators, L.L.C. Wallis boarded the vessel on August 3, 2011 and had no trouble carrying his luggage aboard. While onboard, Wallis bragged to other members of the crew about his ability to bench press over 400 pounds. Wallis worked his shifts as a rigger from August

---

[2] R. Doc. 170, 171, 172, and 173.

3, 2011 until noon on August 7, 2011. Wallis's bunkmate on the vessel was Tron Grogan. Wallis slept in one of the upper bunks. The bunk beds aboard the HOS CORNERSTONE are positioned athwartship. The original mattresses in the bunks had been replaced with pillowtop mattresses, the tops of which were approximately even with the tops of the wooden railings of the bunks.

Wallis worked the night shift on August 7, 2011 from midnight until noon. After finishing his shift, Wallis ate, showered, and then went to bed in the top bunk. He does not recall the exact time he retired to his bunkroom. At some time after noon but before 10:00 p.m., Wallis alleges he rolled out of the bunk and injured his back. He did not report the incident to the captain immediately and instead went back to sleep for several hours. He told the captain about the incident soon after his alarm went off at 10:00 p.m. on August 7, 2011, and the captain directed Wallis to fill out a Hornbeck Offshore Personal Injury or Illness Report. Wallis's written statement included his claim that he rolled out of the top bunk. Tron Grogan was in the bunkroom with Wallis at the time of the alleged fall. That night, the seas were two to three feet.

Wallis stayed on the vessel until August 9, 2011, when he was flown by helicopter to shore to see a doctor. Wallis reported to the nurse practitioner that he injured his back when he fell out of his bunk. On August 9, 2011, Wallis also provided an Employee Statement to Royal Eagle concerning the alleged incident, and Royal Eagle filed form LS-202, Employer's First Report of Injury, with the U.S. Department of Labor, Office of Workers' Compensation.  On August 10, 2011, Royal Eagle created an incident report, which was signed by Wallis. Since the alleged fall, Wallis has seen numerous doctors and has had surgery on his back. Wallis has now reached maximum medical improvement. Royal Eagle's Maritime Employer's Liability insurance carrier has paid

maintenance and cure to Wallis.

Wallis told his coworkers he injured his back while lifting weights prior to boarding the vessel. Christopher Osborne saw Wallis taking Doan's Pills for back pain the day before getting on the boat. Crew members Tron Grogan and Eronne Martin saw Wallis "walking slow" and "walking stiff" and opined that he "wasn't himself" before the day of the alleged fall.

The record in this case is replete with inconsistent testimony, including that of Larian Wallis and Tron Grogan.[3] In his deposition and trial testimony, Wallis waffled as to what portion of his back he injured as a result of the fall and whether he had prior back injuries or back pain. When cross-examined at trial by counsel for Defendant Hornbeck, Wallis first testified he could not recall whether he hit the middle or the lower part of his back when he fell out of the bunk. But when asked just eight minutes later during the same line of questioning whether he landed on his tailbone or hit his back elsewhere, Wallis testified he was pretty sure he landed on his tailbone. Counsel for Hornbeck pointed to Wallis's deposition transcript: when asked the same question at his deposition, Wallis responded that he could not recall where he hit his back when he fell. Once counsel pointed to his deposition testimony, Wallis reverted to the position that he could not recall whether or not he landed on his tailbone. Wallis also gave inconsistent answers at trial as to why he shared his history of back injuries with some doctors but not others. Wallis said at trial that the Captain gave him some medicine after the accident, Tylenol he believed, but at his deposition, Wallis testified that he could not recall whether he took any medicine onboard the vessel. Wallis also testified at trial that he took some medicine at the hotel after his visit to the doctor on August 9, 2011, but at

---

[3] Tron Grogan, Wallis's bunkmate, testified that Wallis said he would pay Tron money to say he saw Wallis fall out of the bunk. Because of inconsistencies, the Court gives no weight to Grogan's testimony.

his deposition, Wallis testified that he could not recall whether he took any medicine at that time. In many instances, Wallis remembered more details at trial than during his deposition. Generally, one forgets details as time passes—not recalls more details later on.

At trial, Wallis testified his back was swollen after the incident and he thought he had abrasions on his lower back but only because he saw it on a doctor's report. However, the medical records presented at trial do not corroborate Wallis's testimony. The nurse practitioner who saw Wallis on August 9, 2011, less than 48 hours after the alleged incident, noted that Wallis was "ambulating with a steady gate" and was "in no acute distress."[4] Further, "[t]here [was] no visible trauma to any part of his back," and he was "non-tender to palpation."[5]

During the trial, Wallis admitted to lying on his Royal Eagle employment application about having graduated from high school and the length of time he knew his employment references. Wallis also admitted on the stand that he misrepresented his educational history on his application to work for Clarion Metals by stating that he received his high school diploma when he had not. Additionally, on the Clarion Metals application he stated he had never been fired from employment, and during his deposition, Wallis testified he had never been fired from a job. At trial, though, Wallis said his memory had been refreshed about his being fired from both Bollinger and Flambeau when these companies were brought to his attention. But Wallis was specifically asked about both Bollinger and Flambeau during his deposition, and Wallis testified then he had not been fired by either employer. On the stand, Wallis's

---

[4] Exhibit 37-42.

[5] *Id.* The records do corroborate Wallis's testimony that he told the nurse he injured his back because he rolled out of the bunk.

explanation was that he must not have remembered at that time. Additionally, when asked at his deposition about the vessel he worked on prior to the HOS CORNERSTONE, Wallis testified he could not recall whether the beds on that vessel had railings. At trial, though, Wallis testified he remembered the vessel had hand rails that came up about three inches over the mattresses. Finally, Wallis was charged and convicted of giving a false name to a law enforcement official about ten years ago, further damaging his credibility.

## CONCLUSIONS OF LAW

On February 28, 2012, Wallis filed suit, bringing claims under the Jones Act and general maritime law against Royal Eagle and Hornbeck for negligence and unseaworthiness.[6] The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1333, which confers on the federal district courts original jurisdiction over admiralty and maritime claims. Venue is proper in this district because the Court has personal jurisdiction over the Defendants.

"[T]he plaintiff in a personal injury action bears the burden to prove by a preponderance of the evidence that there was in fact an accident."[7] Provided the seaman meets his burden of proving an accident occurred, a claim arises under the Jones Act, 46 U.S.C. § 30104, when a seaman's employer breaches its duty to provide a reasonably safe place to work[8] and that breach is the "legal cause" of the seaman's injury.[9] "'If the defendant's negligence played any part, however small, in producing the seaman's

---

[6] R. Doc. 1.

[7] *Stanfield v. Velvet Marine Contractors, Inc.*, No. 88-5542, 1990 WL 41905, at *3 (E.D. La. Apr. 2, 1990) (Mitchell, J.). *See also In re Wilson Marine Transporters*, No. 98-2938, 2001 WL 823735, at *1 (E.D. La. July 19, 2001) (Duval, J.) (finding that "the claimant failed to meet his burden of proving an accident by a preponderance of the evidence" and dismissing his case).

[8] *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989); *Simmons v. Transocean Offshore Deepwater Drilling, Inc.*, 551 F. Supp. 2d 471, 475 (E.D. La. 2008).

[9] *Gavagan v. United States*, 955 F.2d 1016, 1020 (5th Cir. 1992).

injury, it results in liability.'"[10] "To establish a claim of unseaworthiness, 'the injured seaman must prove that the [vessel] owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used.'"[11] A plaintiff raising a claim of unseaworthiness must also "'establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy.'"[12] "There is a more demanding standard of causation in an unseaworthiness claim than in a Jones Act negligence claim. . . . [A] plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness."[13]

Thus, to recover under either theory, Wallis first had the burden of proving by a preponderance of the evidence that the incident, in fact, occurred.[14] As detailed above in the findings of fact, Wallis's testimony was littered with inconsistencies between his deposition and trial testimony. Instances of his lying on employment applications, and to law enforcement officials, also were brought to the attention of the Court. The testimony of Wallis was so thoroughly impeached and contradicted at trial that it is unreliable. The Court is of the opinion that Wallis's credibility, or lack thereof, is decisive to the resolution of this instant case. The Court does not credit the version of the incident offered by Plaintiff, and there was no evidence presented at trial that

---

[10] *Martinez v. Offshore Specialty Fabricators, Inc.*, 481 F. App'x 942, 945 (5th Cir. 2012) (quoting *Brister v. A.W.I., Inc.*, 946 F.2d 350, 354 (5th Cir. 1991)).

[11] *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002) (quoting *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001)).

[12] *Id.* (quoting *Jackson*, 245 F.3d at 527).

[13] *Johnson v. Offshore Exp., Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988) (citing *Smith v. Trans-World Drilling Co.*, 772 F.2d 157, 162 (5th Cir. 1985); *Landry v. Oceanic Contractors, Inc.*, 731 F.2d 299, 302 (5th Cir. 1984); *Alverez v. J. Ray McDermott & Co., Inc.*, 674 F.2d 1037, 1042–43 (5th Cir. 1982)).

[14] *See Stanfield v. Velvet Marine Contractors, Inc.*, No. 88-5542, 1990 WL 41905, at *3 (E.D. La. Apr. 2, 1990) (Mitchell, J.); *In re Wilson Marine Transporters*, No. 98-2938, 2001 WL 823735, at *1 (E.D. La. July 19, 2001) (Duval, J.).

corroborates his story other than his self-serving statements reported to his employer and doctors about an alleged fall and injuries.[15] Based on Wallis's lack of credibility, the lack of corroborating evidence or testimony at trial, combined with the testimony of other witnesses who said he injured his back lifting weights, the Court finds the Plaintiff has not proven by a preponderance of the evidence that he fell out of his bunk on the vessel and injured his back. Because the Court finds Wallis failed to meet this threshold burden, the Court need not determine whether Royal Eagle was negligent or Hornbeck's vessel was unseaworthy.

### CONCLUSION

Based on the above Findings of Fact and Conclusions of Law, the Court finds that the Plaintiff failed to establish that the alleged accident occurred by a preponderance of the evidence. Accordingly, the Court finds that the Defendants Royal Eagle Services, LLC, Hornbeck Offshore Trinidad and Tobago, L.L.C., and Hornbeck Offshore Operators, L.L.C. are entitled to judgment in their favor. The Court will enter a judgment to that effect by separate order.

New Orleans, Louisiana, this _____23rd_____ day of December, 2014.

SUSIE MORGAN
UNITED STATES DISTRICT JUDGE

---

[15] The Court notes that it gave no weight to Tron Grogan's testimony because of his lack of credibility.